UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:  5:13cr32/RH/EMT
                                                   5:18cv143/RH/EMT

JACOBO FELICIANO-FRANCISCO
_____/

## ORDER and REPORT AND RECOMMENDATION

This matter is before the court on Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and memorandum of law in support (ECF Nos. 183, 190).[1]    The Government responded in opposition to the motion, and Defendant filed a reply (ECF Nos. 199, 200).[2]    The case was referred to the undersigned magistrate judge for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.    *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).    After a review of the record and the arguments presented, it

---

[1]  ECF No. 190 is a redacted version of Defendant's original § 2255 memorandum (ECF No. 184). When referring herein to Defendant's motion, the reference is intended to incorporate the memorandum.

[2]  Defendant recently filed a "Motion for Leave to File an Amended Pleading . . ." (ECF No. 201), which contains additional facts and argument.    The motion will be granted to the extent the court reviewed and considered the submission as it relates to claims raised in the underlying § 2255 motion.

is the opinion of the undersigned that Defendant has not raised any issue requiring

an evidentiary hearing and that the § 2255 motion, as supplemented, should be

denied.    *See* Rules 8(a) and (b), Rules Governing Section 2255 Proceedings.

I.    BACKGROUND AND PROCEDURAL HISTORY

Defendant Jacobo Feliciano-Francisco was charged in a five-count indictment

with conspiracy to transport an individual in interstate commerce for the purpose of

prostitution and four substantive offenses related to the conspiracy (ECF No. 18).

Defendant was the lone defendant charged in the case.    According to the

indictment, a network of brothels and prostitution delivery services comprised of

undocumented individuals from Spanish-speaking countries operated between 2006

and 2011 in Tennessee and Kentucky.    Between 2009 and 2011, F.T.,[3] an

undocumented woman, was forced and coerced to work as a prostitute in an

organization referred to as the Larusa Organization (Larusa).    At some point, F.T.

contacted law enforcement and cooperated with and assisted in the investigation and

prosecution of individuals involved the Larusa sex trafficking network, resulting in

thirteen convictions.    In 2012, due to safety concerns, the Federal Bureau of

---

[3] On June 6, 2018, the district court entered an order directing that any filings in the case refer to the victim by her initials or role in the case rather than by her full name (ECF No. 182).

Investigation (FBI) assisted F.T. and her family in relocating to Panama City Beach,

Florida.    The indictment stems from F.T.'s kidnapping from her home in Panama

City Beach.

Count One charged a conspiracy to kidnap F.T. and transport her in interstate

commerce with the intent that F.T. engage in prostitution, in retaliation for F.T.

cooperating with law enforcement, in violation of 18 U.S.C. §§ 371 and 1201(c).

In furtherance of the conspiracy, the conspirators agreed to force F.T. to work as a

prostitute in Louisiana.    The conspirators further agreed to transport F.T. from

Florida to Mississippi, where another conspirator would pick F.T. up and transport

her to Louisiana.    To that end, Defendant and another conspirator kidnapped F.T.

from her home by threatening her physical safety, as well as that of her family.

Defendant sexually assaulted F.T. while transporting her from Florida to Mississippi

and then held F.T. at a residence in Mississippi, where she was to remain until she

was transported to Louisiana.    Count Two charged Defendant with kidnapping F.T.

and transporting her in interstate commerce in violation of 18 U.S.C. §§ 1201(a) and

2.    Count Three charged Defendant with causing bodily injury to F.T. by sexual

assault, in retaliation for F.T. having cooperated with law enforcement in violation

of 18 U.S.C. §§ 1513(b)(2), 1515 and 2.    Count Four charged Defendant with

knowingly transporting F.T. in interstate commerce with the intent that F.T. engage

in prostitution in violation of 18 U.S.C. §§ 2421 and 2.   And Count Five charged

Defendant with knowingly persuading, inducing, enticing, or coercing an individual

to travel in interstate commerce to engage in prostitution in violation of 18 U.S.C.

§§ 2422(a) and 2.

After a four-day trial at which Defendant was represented by court-appointed

counsel, Maria Dykes, the jury returned a verdict of guilty on all counts (ECF No.

100).   F.T. testified at trial; Defendant elected not testify.

The Presentence Investigation Report (PSR) includes additional details

regarding the crimes.   The PSR indicates that in June 2013, members of Larusa

familiar with F.T.'s cooperation with law enforcement formed a plan to kidnap F.T.

and force her back into prostitution in retaliation for F.T. cooperating with law

enforcement (ECF No. 125, PSR ¶ 18).   On June 27, 2013, Defendant and an

unindicted and unidentified co-conspirator, referred to at trial as the "Bald Man,"

kidnapped F.T. from her home.   Defendant drove the vehicle used in the

kidnapping, and the "Bald Man" rode as a passenger.   F.T. got into the car after the

"Bald Man" placed his hands underneath his shirt as if he had a weapon and verbally

threatened F.T.'s uncle, who was present, and other members of F.T.'s family.

After the kidnapping, the "Bald Man" exited the vehicle not far from F.T.'s home. After the "Bald Man" departed, Defendant sexually assaulted F.T. by forcing her to perform oral sex on him and threatening to harm F.T. and her family if she did not comply.   Defendant then drove F.T. from Panama City Beach to a residence in Hattiesburg, Mississippi, that was to be used as a brothel.   F.T. escaped the residence through a small window in the bathroom and flagged down a bus driver who took her to a nearby police station where she relayed to officers the events that had transpired.   Officers located the residence from which F.T. escaped and arrested Defendant the same day.

The defense argued at trial that Defendant was merely a driver who had been paid to pick F.T. up from Panama City Beach and drive her to Mississippi. Defendant denied kidnapping F.T. and claimed there was no "Bald Man" with him when he picked her up.   Defendant also claimed that F.T. and her uncle fabricated the story of the kidnapping to somehow assist F.T.'s uncle with immigration issues.

The PSR separated the five offenses of conviction into two groups for guidelines calculation purposes.   Group 1 (Counts 1, 2, and 3) had a base offense level of 32 (PSR ¶¶ 27–29).   Defendant received a two-level upward adjustment for use of a dangerous weapon and a six-level upward adjustment for sexually

exploiting the victim, resulting in a total adjusted offense level of 40 (PSR ¶¶ 30–35).    Group 2 (Counts 4 and 5) had a base offense level of 14 and a four-level upward adjustment because the offense involved coercion, resulting in a total adjusted offense level of 18 (PSR ¶¶ 36–41).    The multiple count adjustment did not increase Defendant's total adjusted offense level (PSR ¶¶ 42–48).    Defendant— an illegal immigrant—had no reported criminal history, so his criminal history category was I (PSR ¶¶ 49–52, 59).    The applicable advisory guidelines imprisonment range was 292 to 365 months (PSR ¶ 71).    The maximum statutory terms of imprisonment were life as to Counts 1 and 2, twenty years as to Counts 3 and 5, and ten years as to Count 4 (PSR ¶ 70).

At sentencing, Defendant objected to the upward adjustments for use of a dangerous weapon and sexual exploitation, although counsel conceded she had no legal argument in support of the latter objection (ECF No. 149 at 3–6).    The court overruled both objections (*id.* at 16–17).    The Government urged the court to impose an above-guidelines sentence because the guidelines did not take into account F.T.'s cooperation with law enforcement (*id.* at 19–22).    The court sentenced Defendant to the statutory maximum terms of imprisonment on each count.    Defendant thus was sentenced to life imprisonment on Counts 1 and 2, 240-

months' imprisonment on Counts 3 and 5, and 120-months' imprisonment on Count 4, with the sentences on all counts to run concurrently (*id.* at 32; ECF Nos. 134, 135).

Defendant appealed, represented by Michael Robert Ufferman, and raised a number of alleged errors.    First, Defendant argued the Government violated Fed. R. Crim. P. 16(a)(1)(F) in failing to disclose certain photographs prior to trial. Defendant also argued the district court erred by admitting the photographs into evidence (ECF No. 166 at 2–5).    The appellate court found no discovery violation and, further, that even if there had been a violation, Defendant failed to show he was prejudiced as a result thereof.

Defendant's second assertion of error pertained to the Government's questioning of a defense witness (*id.* at 6–12).    At trial, Defendant sought to present the testimony of a woman present at the house in Mississippi from which F.T. escaped, believing it would be exculpatory.    The defense was aware the witness intended to invoke her Fifth Amendment privilege against self-incrimination in response to cross-examination on two subjects—her immigration status and a prior inconsistent statement provided to law enforcement.    The Government objected to the witness's plan to invoke the Fifth Amendment and denied Defendant's request

that it grant the witness use immunity.    The court asked defense counsel if allowing the witness to testify subject to cross-examination was acceptable.    After consulting with Defendant, counsel responded in the affirmative and called the woman as a witness, aware she would be subjected to full cross-examination by the Government.

On cross-examination, the witness invoked the Fifth Amendment in response to eight questions.    Defendant argued on appeal that the district court erred by allowing the Government to ask "potentially incriminating questions solely for the purpose of allowing the jury to hear [the defense witness] invoke the Fifth Amendment" (*id.* at 7–8).    Defendant also argued the Government should have offered the witness use immunity.    The Eleventh Circuit disagreed and found Defendant "invited" the error in calling the witness to testify without immunity (*id.* at 8–9).    The court also found neither party called the witness for the purpose of having the witness invoke the Fifth Amendment.

Next, Defendant challenged the district court's offense level calculations, including application of the dangerous weapon and sexual exploitation enhancements (*id.* at 13–15).    The Eleventh Circuit found that the actions of the "Bald Man" in pretending to brandish a weapon under his shirt were attributable to Defendant because the "Bald Man" was a co-conspirator.    The court also found that

the PSR and evidence at trial "unquestionably demonstrated" that Defendant sexually exploited the victim (*id.* at 15).

Finally, Defendant challenged the substantive reasonableness of his sentence (*id.* at 16–18). The Eleventh Circuit held that Defendant's above-guidelines sentence was not substantively unreasonable because it properly took into account the § 3553(a) factors, including "the need for deterrence, the desire to protect federal witnesses, and the severe cruelty of the offenses" (*id.* at 18).

Defendant now claims that both trial and appellate counsel were constitutionally ineffective. The Government opposes the motion in its entirety.

## II. DISCUSSION

### A. General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

The law is well established that a district court need not reconsider issues raised in a section 2255 motion that were resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, therefore, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (internal marks omitted). Broad discretion is afforded a court's determination of whether a particular claim was previously raised and decided. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Moreover, because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234–35 (11th Cir. 2004); *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay*, 657 F.3d at 1195. An issue is

"'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a section 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that [ ]he was prejudiced by that performance." *Demar v. United States*, 228 F. App'x 940, 950 (11th Cir. 2007) (internal marks, brackets, and citations omitted);[4] *see also Johnson v. Ala.*, 256 F.3d 1156, 1176

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

(11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.").

The Sixth Amendment right to effective assistance of counsel extends "to the negotiation and consideration of plea offers that lapse or are rejected." *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (citing *Missouri v. Frye*, 566 U.S. 134, 138–45 (2012); *Lafler v. Cooper*, 566 U.S. 156, 163 (2012)). *Strickland*'s two-part test applies to cases involving guilty pleas and offers of such. *Carmichael v. United States,* 966 F. 3d 1250, 1258 (11th Cir. 2020); *Lafler*, 566 U.S. at 162–63 (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). A defendant who claims ineffective assistance of counsel led him to reject a plea offer must show that, but for the ineffective advice assistance of counsel, (1) he would have accepted the plea, (2) the prosecution would not have withdrawn the plea, (3) the court would have accepted the terms of the plea; and (4) the conviction, sentence, or both under the offer's terms would have been less severe than the judgment and sentence imposed. *United States v. Smith*, 983 F. 3d 1213, 1221–22 (11th Cir. 2020) (citing *Lafler*, 566 U.S. at 164). "The defendant's 'own conclusory after-the-fact assertion' that he would have accepted a guilty plea, without more, is insufficient to satisfy the first prong of

the prejudice test." *Smith*, 983 F.3d at 1222 (quoting *Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015) (stressing that record evidence the defendant "had absolutely no interest in" pleading guilty contradicted defendant's later claim that he would have done so); *see also Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Osley v. United States*, 751 F.3d 1214, 1224–25 (11th Cir. 2014) (a defendant's insistence that he is innocent is a "relevant consideration" that "makes it more difficult to accept his claim" that he would have agreed to a plea deal).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at

689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   The fact that a particular defense or action ultimately proved unsuccessful does not constitute ineffectiveness assistance of counsel. *Chandler*, 218 F.3d at 1314.   When reviewing the performance of experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger because "[e]xperience is due some respect."   *Id.* at 1316 n.18.

To establish the second prong—prejudice—a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."   *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*, 466 U.S. at 693).   For the court to focus merely on "outcome determination" is insufficient, as "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).   A defendant thus must establish "that counsel's errors

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).    Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001).    A significant increase in sentence is not required to establish prejudice because "any amount of actual jail time has Sixth Amendment significance."    *Id.* at 203.    To demonstrate prejudice in the context of an appeal, the arguments the defendant alleges his counsel failed to raise must have been significant enough to have impacted the outcome of the appeal. *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988).

To establish ineffective assistance of any sort, a defendant must provide factual support for contentions regarding counsel's allegedly deficient performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).    Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* standard.    *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Dale v. United States*, 809 F. App'x 727, 728 (11th Cir. 2020) (citing *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992)); *Stano v. Dugger*, 901

F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Furthermore, counsel is not constitutionally ineffective for failing to preserve or

argue a meritless claim.    *Hollis v. United States,* 958 F. 3d 1120, 1124 (11th Cir.

2020) (counsel not constitutionally ineffective for failing to raise meritless objection

to use of prior drug convictions as predicate offenses under ACCA); *Denson*, 804

F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney Gen., Fla.*, 536 F.3d

1225, 1233 (11th Cir. 2008)).    This is true regardless of whether the issue is a trial

or sentencing issue.    *See, e.g.*, *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27

(11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance

of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009)

(counsel not ineffective for failing to make a meritless objection to an obstruction

enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel

not ineffective for failing to raise issues clearly lacking in merit).

As the Eleventh Circuit recognized, given the principles and presumptions set

forth above, "the cases in which habeas petitioners can properly prevail . . . are few

and far between."    *Chandler*, 218 F.3d at 1313.    This is because the test is not

what the best lawyers would have done or even what most good lawyers would have

done but, rather, whether some reasonable lawyer could have acted in the manner in

which defense counsel acted.    *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).    Lawyers in every case could have done something more or different; the issue, however, is not what is possible but what is constitutionally compelled.    *Chandler*, 218 F.3d at 1313.    "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).    In other words, as the Sixth Circuit framed the issue, the question is not whether counsel was inadequate but whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."    *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).    Regardless of how the standard is framed, under the prevailing case law, it is abundantly clear that a moving defendant must overcome a high hurdle to establish a violation of his constitutional rights based on his attorney's performance.    A defendant's belief that a certain course of action counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing on a section 2255 motion is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."  *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).   Hence, not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.   *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.   *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a section 2255 motion] are . . . based upon unsupported generalizations") (internal marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   *Lynn*, 365 F.3d at 1239.   And disputes involving purely legal issues can be resolved by the court without a hearing.

With these standards in mind, the court will address each of Defendant's claims of ineffective assistance of trial and appellate counsel in turn.

B.    Ineffective Assistance of Trial Counsel

1.    Failure to Advise Prior to Trial

Defendant makes several arguments in his first ground for relief. First, Defendant claims trial counsel was constitutionally ineffective because she did not adequately explain the Government's case, the law, or the evidence against him so that he could make an informed decision about whether to plead guilty or proceed to trial. Defendant does not specify the evidence or information he believes counsel failed to explain, nor does he state the manner in which such evidence or information would have impacted his decision whether to plead guilty. Moreover, the record reflects that at a hearing on a motion for protective order seven months before trial, counsel reported that she had visited Defendant several times and spent several hours at a time with him discussing, among other things, the evidence in the case (*see* ECF No. 158 at 8, 9).

Defendant also says counsel did not advise that he would be "tried for a violation of the use of a dangerous weapon, but be sentenced for the application of the sexual exploitation increase" (ECF No. 190 at 5). This assertion is a reference

to the two guidelines adjustments applied at sentencing for use of a dangerous weapon and sexual exploitation of the victim.   Defendant's assertion evidences a misunderstanding of the law.   Factual matters that do not increase a defendant's sentence beyond the applicable statutory maximum do not have to be tried to a jury and proven beyond a reasonable doubt.   *See Apprendi v. New Jersey*, 530 U.S. 466 (2000).   Because the two adjustments in this case did not increase Defendant's sentence beyond the applicable statutory maximum on any count, the facts upon which the adjustments were based did not have to be submitted to the jury for findings for the adjustments to be applied.

Defendant also contends counsel failed to reveal "crucial information and evidence that should have been, but was not, used" at trial (ECF No. 190 at 5). Again, Defendant does not identify the nature of the allegedly crucial information and evidence, the reason such information and evidence should have been used at trial, or the manner in which the information and evidence would have changed the outcome of the proceeding.   *Boyd*, 697 F. 3d at 1333–34; *Dale*, 809 F. App'x at 728.   Defendant thus has not shown error in his first ground for relief.

> 2.    Advice Concerning the Plea Agreement and Sentencing Exposure

In the second ground for relief, Defendant appears to contend that he was offered a plea agreement pursuant to which he would receive a sentence of 120-months imprisonment.  He claims that had counsel provided competent legal advice, he would have accepted the offer, pled guilty, and received a significantly lower sentence (ECF No. 190 at 6).  Defendant again asserts that he never understood that he could be sentenced based on conduct not charged in the indictment or found by a jury beyond a reasonable doubt and that had he known he would receive a life sentence, he would have accepted the Government's offer and pled guilty (*id.* at 7).

Defendant's claim that such a plea offer existed is highly improbable. "Unlike state court and some federal courts, the Government in the Northern District of Florida does not enter into plea agreements recommending a specific sentence and has not done so [for] more than twenty-five years."  *See, e.g., United States v. Ziolowski*, No. 1:12cr12/MW/GRJ, 2017 WL 4477037 (N.D. Fla. Oct. 6, 2017) (order adopting report and recommendation) (observing same).  Not surprisingly, therefore, Defendant has offered no evidence that such an offer was made in this instance.  Defendant likewise has failed to demonstrate that he would have accepted a plea offer or that it would not have been withdrawn.  To the contrary, as

the Government notes, Defendant has steadfastly maintained his innocence (ECF No. 199-1 at 5; ECF No. 201-1 at 29).    Finally, Defendant has failed to demonstrate the court would have accepted such a plea.

Before accepting a guilty plea, Rule 11 of the Federal Rules of Criminal Procedure requires the court to determine that the plea is voluntary and that there is a factual basis for the plea.    Fed. R. Crim. P. 11(b)(2), (3).    This typically requires an admission of guilt.    In some circumstances, a court may accept a guilty plea from a defendant who maintains innocence as long as there is a factual basis for the plea. *See N.C. v. Alford*, 400 U.S. 25, 38 & n.10 (1970).    Thus, even if Defendant had been willing to enter an *Alford* plea, there is no indication the court would have accepted the plea.    *See Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014); *United States v. Gomez-Gomez*, 822 F.2d 1008, 1011 (11th Cir. 1987) ("[t]hough a judge may enter judgment upon a guilty plea offered under [*Alford*], he is not required to do so").    Defendant's suggestion that he would have pled guilty had he been fully advised is merely an unsupported "after the fact" statement insufficient for section 2255 relief.    *Pericles*, 567 F. App'x at 782 (citing *Diaz v. United States,* 930 F.2d 832, 835 (11th Cir. 1991)); *see also United States v. Smith*, 983 F.3d 1213, 1221–22 (11th Cir. 2020) (citing *Rosin v. United States,* 786 F.3d

873, 879 (11th Cir. 2015) (stressing that record evidence the defendant "had absolutely no interest in" pleading guilty contradicted defendant's later claim that he would have done so)); *see also Diaz,* 930 F.2d at 835 (defendant cited no evidence indicating that prior to his conviction, he expressed a desire to plead guilty, and after the fact testimony about a desire to plead did not establish ineffective assistance of counsel).

### 3.    Failure to Investigate/Move for a Mistrial

In the third ground for relief, Defendant asserts counsel failed to adequately investigate and follow up on leads and failed to move for a mistrial based on what Defendant characterizes as perjured testimony from two Government witnesses— the victim, F.T., and the victim's "uncle," J.M. (ECF No. 190 at 7).   In the motion, Defendant does not identify any investigation counsel allegedly failed to conduct or leads counsel failed to pursue.   In the amendment to the motion, however, Defendant's raises a number of seemingly rhetorical questions about matters he contends counsel could or should have investigated (ECF No. 201-1 at 25–27).

"Among the duties owed by minimally competent counsel is the duty to make reasonable investigations or to make a reasonable decision that makes said investigations unnecessary."   *Blankenship v. Hall*, 542 F.3d 1253, 1273 (11th Cir.

2008) (quoting *Strickland,* 466 U.S. at 690–91).    However, the "correct approach toward investigation reflects the reality that lawyers do not enjoy the benefit of endless time, energy or financial resources."    *Williams v. Head*, 185 F.3d 1223, 1236–37 (11th Cir. 1999) (quoting *Rogers v. Zant,* 13 F.3d 384, 387 (11th Cir. 1994)).    To be effective, a lawyer is not required to "pursue every path until it bears fruit or until all hope withers."    *Id.* (quoting *Foster v. Dugger,* 823 F.2d 402, 405 (11th Cir. 1987) (quoting *Solomon v. Kemp,* 735 F.2d 395, 402 (11th Cir. 1984))).    A "defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."    *Adekeye v. Davis*, 938 F.3d 678, 683 (5th Cir. 2019) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).    Although Defendant references certain matters he claims counsel should have investigated, he does not specify the information that would have been obtained from such investigation or the manner in which it would have changed the outcome of the proceeding.    His claim thus fails.

With regard to the testimony of F.T. and J.M., Defendant argues such testimony was inadmissible because it was false, hearsay, and unduly prejudicial (ECF No. 190 at 9, 11–12).    Specifically, Defendant contends that, contrary to his

testimony at trial, J.M. never saw two people because the "Bald Man" was fictitious (ECF No. 190 at 9).    Defendant also contrasts J.M.'s testimony with that of F.T., pointing to F.T.'s testimony that she was scared and J.M.'s testimony that the "Bald Man" told F.T. nothing was going to happen to her children but that if she did not obey, something could happen to her family (*id.*).    Defendant also says F.T. was not J.M.'s niece (*id.*).

A defendant's right to due process is violated when a prosecutor fails to correct false testimony of a Government witness.    *Napue v. Ill.*, 360 U.S. 264 (1959); *Giglio v. United States*, 405 U.S. 150, 153 (1972).    The Government's reliance on perjured testimony is grounds for reversal, however, only upon a showing that (1) the contested statements were actually false, (2) the Government knew the statements were false, and (3) the statements were material.    *United States v. Bailey*, 123 F.3d 1381, 1395 (11th Cir. 1997).    A memory lapse, unintentional error, or oversight by a witness is not tantamount to perjury.    *Id.* at 1395–96.    And minor differences in two witnesses' recollections of events is not proof of perjury. *See United States v. Michael*, 17 F.3d 1383, 1385 (11th Cir. 1994) ("We refuse to impute knowledge of falsity to the prosecutor where a key government witness'[s]

testimony is in conflict with another's statement or testimony."). Instead, such discrepancies are matters to be addressed on cross-examination and in argument.

Here, counsel inquired into inconsistencies between the witnesses' recollections of events during cross-examination. In addition, although J.M. is not F.T's biological uncle, as Defendant asserts, the evidence at trial showed that J.M's family is close to F.T.'s family and that F.T. referred to J.M. as his niece (ECF No. 153 at 78–80; ECF No. 154 at 4). Defendant therefore has failed to show perjured testimony was presented or the Government's knowledge of the same.

Defendant's complaint that the testimony of F.T. and J.M. constituted hearsay also misses the mark. Hearsay is an out of court statement offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). If a defendant is unable to cross-examine the declarant of a statement offered into evidence, the Confrontation Clause may be implicated and the hearsay evidence excluded. However, the Confrontation Clause does not bar use of testimonial statements offered for other purposes. *Crawford v. Wash.*, 541 U.S. 36, 59 n.9 (2004). For instance, a witness may testify about what someone else said to explain the witness's subsequent actions. *See, e.g. United States v. Jimenez*, 564 F.3d 1280, 1288 (11th Cir. 2009) (citing cases). J.M.'s testimony that the "Bald Man" told F.T. nothing would

happen to her family if she obeyed his command and got into the vehicle was not offered to prove the truth of the matter asserted—i.e., that nothing, in fact, would happen to F.T.'s family if F.T. complied with the "Bald Man's" command.    Instead, the testimony was offered to explain the reason F.T. got into the vehicle.

Finally, with regard to Defendant's complaint that the testimony was prejudicial, the fact that testimony is prejudicial is not alone a basis for excluding the testimony.    Inculpatory evidence—that which tends to prove a defendant's guilt—is, by its very nature, prejudicial to the defendant.    Rule 403 of the Federal Rules of Evidence provides for exclusion of relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice."    It is within the discretion of the trial court to weigh the danger of unfair prejudice against the probative value of evidence sought to be admitted.    *United States v. Jiminez*, 564 F.3d 1280, 1288 (11th Cir. 2009).    As indicated above, what the "Bald Man" told F.T. was relevant to understanding F.T.'s actions in getting into the vehicle and, as such, was highly probative.    The only arguable prejudice stemming from the testimony was the fact that the jury could consider it evidence of guilt.    That fact alone, however, did not provide a basis upon which to exclude the testimony.

In the amendment to the motion, Defendant argues the testimony of F.T. and J.M. was objectionable because it was "self-serving," as F.T. and J.M. had "too much to gain from their testimony" (ECF No. 201-1 at 18).   A witness's motive for testifying is fertile ground for cross-examination and argument.    It does not provide a basis upon which to exclude the testimony.

Defendant thus has not shown counsel was constitutionally ineffective in failing to conduct further investigation or in failing object to the testimony of F.T. and J.M. on the grounds alleged.

### 4.    Failure to Move to Exclude Testimony about Larusa

In Grounds Four and Five, Defendant contends counsel was ineffective in failing to move to exclude F.T.'s testimony about Larusa pursuant to Federal Rules of Evidence 412 (Ground Four) and 403 and 404(b) (Ground Five) (ECF No. 190 at 14–16).   On the first day of trial, FBI Special Agent Stephen Fogarty (SA Fogarty) testified about the FBI's investigation of Larusa for human trafficking and prostitution (ECF No. 153 at 48–62).   SA Fogarty testified generally about how human trafficking organizations work.   He indicated that women who pay smugglers to bring them into the country expecting jobs as housekeepers or waitresses often end up forced to work as prostitutes to pay off the debt.   He

explained the organizations use fear and coercion, including by threatening to call immigration and threatening to harm the women's families, to control the women, who are forced to work eleven or more hours per day and are moved from place to place. SA Fogarty testified that as a result of F.T.'s cooperation, thirteen people were charged and convicted in the Eastern District of Tennessee and the Eastern District of Kentucky. Notably, SA Fogarty clarified on cross-examination that Defendant was not involved in, or a subject of, the Tennessee/Kentucky investigation (ECF No. 153 at 66–67).

SA Fogarty further testified that after the conclusion of the criminal cases, F.T. contacted him twice after being confronted by individuals who seemed to know about her cooperation with law enforcement. The first encounter occurred at a shopping mall; the second encounter occurred when an individual went to F.T.'s home. It was after the second incident that the FBI assisted F.T. and her family, including F.T.'s three children, in relocating to Panama City Beach.

F.T. testified on the second day of trial. F.T. explained how she became involved with Larusa in 2009 (ECF No. 154 at 56–62). She said she was forced to prostitute herself to repay a debt and told that if she did not do so, Larusa would harm or kill members of her family. F.T. described working six days per week,

from noon until 2:00 a.m., and said she and the other women were forced to prostitute themselves to up to forty men per day.   As long as the women were compliant, F.T. testified, there were no problems; if the women resisted, however, Larusa members would hit them and threaten to kill their children and families or have them deported.

Defense counsel objected to SA Fogarty testifying about Larusa and how the organization was run, arguing such testimony was not relevant to the crimes charged and that the prejudicial effect of such testimony outweighed any probative value (ECF No. 153 at 51).   The Government responded that testimony concerning the organization's coercive tactics explained F.T.'s behavior and discredited the defense theory that Defendant did not kidnap F.T. and that F.T. left voluntarily with him (*id.* at 51–52).   The court overruled the objection (*id.* at 52).   The defense raised the same objection to F.T.'s testimony regarding Larusa (ECF No. 154 at 59).   The Government again argued such testimony was relevant to show F.T.'s state of mind and to contradict the defense theory that the kidnapping was fabricated to somehow assist J.M. with immigration issues (*id.* at 59–61).   The Government also argued the testimony was relevant because Defendant was charged with two prostitution-related offenses.   The court overruled the objection.

Defendant now contends, in Ground Four, that F.T.'s testimony about Larusa was inadmissible and should have been excluded pursuant to Rule 412 of the Federal Rules of Evidence.    Rule 412 proscribes, in cases involving alleged sexual misconduct, the admission of evidence offered to prove that a victim engaged in other sexual behavior or to prove a victim's sexual predisposition.    The Rule was designed to protect victims of sexual misconduct from potential embarrassment and to safeguard such victims against stereotyping.    Here, F.T. was the victim.    F.T.'s testimony regarding Larusa was not offered to show F.T. engaged in other sexual behavior or to prove F.T.'s sexual predisposition.    Rather, the Government offered the testimony to show F.T.'s state of mind and to prove that F.T. got into the vehicle under duress and not voluntarily, as the defense argued.    F.T.'s testimony regarding Larusa thus plainly did not fall under Rule 412's ambit.

Defendant argues the probative value of F.T.'s testimony regarding Larusa was substantially outweighed by its unfair prejudice because SA Fogarty had already testified about the organization, the background of which Defendant asserts had "nothing to do with the events that happened on June 27th, 2013" (ECF No. 190 at 14–15).    Counsel objected to the testimony at trial on essentially the same basis Defendant raises in his motion.    The court overruled the objection.    Contrary to

Defendant's suggestion, therefore, counsel raised the issue at trial.    Moreover, SA Fogarty's testimony that Defendant was not involved in the Tennessee/Kentucky investigation minimized, if not alleviated, any prejudicial effect of such testimony.

Defendant also claims, in Ground Five, that F.T's testimony should have been excluded pursuant to Rule 404(b), which provides that "[e]vidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."    Fed. R. Evid. 404(b)(1).    Such evidence can be admitted for other purposes, however, such as to show motive, intent, absence of mistake, or lack of accident.    Fed. R. Evid. 404(b)(2).    Evidence of criminal activity other than what has been charged also may be admissible "as intrinsic evidence outside the scope of Rule 404(b)."    *United States v. Joseph*, 978 F.3d 1251, 1263 (11th Cir. 2020) (quoting *United States v. Horner*, 853 F.3d 1201, 1214–15 (11th Cir. 2017) (internal marks omitted)). Evidence is intrinsic if, for instance, it is necessary to complete the story of the crime or is inextricably intertwined with evidence regarding the charged offense.    *Joseph*, 978 F.3d at 1263 (citing *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007)).    "Evidence is 'inextricably intertwined' with the evidence of the charged offense if it forms an 'integral and natural part of the witness's accounts of the

circumstances surrounding the offenses for which the defendant was indicted.'" *Id.* (citing *Edouard*, 485 F.3d at 1344 (internal marks omitted)).

Typically, a defendant seeks to exclude evidence of *his own* actions under Rule 404(b). As noted *supra*, Defendant was not involved in or a subject of the Tennessee/Kentucky investigation. In any event, F.T.'s testimony regarding her experience with Larusa did not fall within the scope of Rule 404(b) because the Government did not offer the testimony to prove F.T.'s character or that F.T. acted in accordance with such character on any occasion. The Government offered F.T.'s testimony concerning her involvement with Larusa because it formed an "integral and natural part" of F.T.'s account of the kidnapping and explained the reason she acted in the manner in which she did. In other words, the testimony "completed the story" by explaining the "context, motive[,] and set-up of the crime" committed against F.T. *Edouard*, 485 F.3d at 1344 (quoting *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998)). It also was relevant to prove the motive and intent behind the kidnapping conspiracy. *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995) (holding that at trial, the Government may use qualifying 404(b) evidence to prove intent).

With regard to the alleged unfairly prejudicial nature of F.T.'s testimony, Rule 403 proscribes the introduction of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Horner*, 853 F.3d 1201, 1213–14 (11th Cir. 2017) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). Excluding evidence pursuant to Rule 403 is an extraordinary remedy which should be used only sparingly, with the balance struck in favor of admissibility. *Edouard,* 485 F.3d at 1344 n.8 (quoting *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (internal marks omitted)); *see also Eghnayem v. Boston Scien. Corp.*, 873 F.3d 1304, 1316 (11th Cir. 2019) (citing *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003)). The balancing of competing interests is fact-specific. *See Delgado*, 56 F.3d at 1366 (noting the "greater the Government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice") (citation omitted). The court must consider the evidence "in a light most favorable to its admission, maximizing its probative

value and minimizing its undue prejudicial impact." *Eduoard*, 485 F.3d at 1344 n.8 (quoting *United States v. Brown*, 441 F.3d 1330, 1362 (11th Cir. 2006)).

As set forth above, F.T.'s testimony regarding her experience with Larusa had significant probative value and, in fact, was indispensable to the Government's case, which depended upon a finding that F.T. did not voluntarily get into the vehicle with Defendant. It also provided a motive for the kidnapping. And F.T. did not implicate Defendant in any way in the events that occurred while she was involved with Larusa, which avoided any unfair prejudice to Defendant.

Because the challenged testimony was not excludable under Rule 403, 404(b), or 412, counsel was not constitutionally ineffective for any failure to object to the testimony on those grounds. *See Hollis,* 958 F.3d at 1124 (counsel not constitutionally ineffective for failing to raise meritless objection to use of prior drug convictions as predicate offenses under ACCA); *see also Denson*, 804 F.3d at 1342; *Freeman*, 536 F.3d at 1233.

### 5.    Failure to Move for Judgment of Acquittal

Defendant's sixth ground for relief is that counsel was ineffective in failing to move for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure at three critical junctures: (1) after the prosecution rested, (2)

after the defense rested, and (3) after the jury returned its verdict (ECF No. 190 at 17). Defendant claims such motions would have been successful because the evidence did not support a finding that the purpose of the "trip" from Florida to Mississippi was to force F.T. to engage in prostitution.

Contrary to Defendant's assertion, defense counsel moved for a judgment of acquittal after the close of the Government's case, arguing the Government "failed to prove a prima facia case with all the elements under crimes charged" (ECF No. 156 at 77–78). The court denied the motion, finding "ample argument that this needs to go to the jury" (*id.* at 78). Counsel renewed the motion at the close of the evidence. The court again denied the motion, finding it was a "no-brainer" and had to "go to the jury on the way the record is right now" (*id.* at 115). Although counsel did not renew the motion for judgment of acquittal after the jury returned its verdict, Defendant has set forth no additional argument counsel could have made at that time. And there is no indication the court would have been inclined to rule differently than it ruled on the two prior motions.

Again, the evidence at trial showed Defendant kidnapped F.T. in retaliation for her cooperation with law enforcement in the investigation and prosecution of individuals involved with the Larusa sex trafficking organization. The evidence

further showed that Defendant threatened F.T. and sexually assaulted F.T. while transporting her from Florida to Mississippi, with the intent to arrange for F.T. to be transported to a brothel in Louisiana and forced into prostitution.    Crediting the testimony of F.T. and J.M., as well as that of SA Fogarty, which the jury apparently did, there was ample evidence to sustain a conviction.    Defendant thus suffered no prejudice as a result of counsel's failure to renew the motion for judgment of acquittal following the jury's verdict.

Defendant claims in his reply that even if he conducted "prostitution-related activities . . . no reasonable jury could find that [his] activities had the requisite nexus to interstates [sic] commerce to constitute a federal offense" (ECF No. 200 at 8). Given the fact that the evidence showed Defendant crossed state lines with F.T. and arranged for F.T. to be transported to yet another state, a reasonable jury could readily have concluded that Defendant's actions involved interstate commerce, as the jury did in this case (*id.*).

Defendant also asserts the evidence did not support the "enticement" element for a conviction under 18 U.S.C. § 2422.    Section 2422 applies to an individual who knowingly "persuades, induces, entices, *or coerces* any individual" to travel in interstate commerce to engage in prostitution.    *Id.* (emphasis added).    There was

ample evidence at trial that Defendant, along with the "Bald Man," whose actions as

a co-conspirator were attributable to Defendant, coerced F.T. to get into the vehicle

for the purpose of ultimately forcing F.T. to engage in prostitution.   *See, e.g.,*

*United States v. Bennett*, No. 2:11CR191-MHT, 2012 WL 5512280, at *3 (M.D.

Ala. Nov. 14, 2012), *aff'd*, 518 F. App'x 660 (11th Cir. 2013) ("It is a longstanding

rule that, in a criminal conspiracy, 'the overt act of one partner in crime is attributable

to all,' so long as, given the nature of the conspiracy, it was 'reasonably foreseeable'

that the co-conspirator's act would be committed.") (quoting *Pinkerton v. United*

*States*, 328 U.S. 640, 647 (1946)).

Defendant therefore has not shown counsel was constitutionally ineffective

for failing to move for a judgment of acquittal at any stage of the trial and thus is not

entitled to relief on this ground.

6.    Failure to Make Proper Objections to PSR and Sentencing
       Enhancements

Defendant next contends counsel was constitutionally ineffective in failing to

"properly" object to alleged erroneous information in the PSR and improper

sentencing enhancements (ECF No. 190 at 19).   As set forth above, the court

applied sentencing enhancements for use of a dangerous weapon and sexual

exploitation of the victim.   The propriety of those enhancements was challenged

and reviewed on appeal (ECF No. 166 at 13–15); as a result, this court is precluded from revisiting the issue. *Stoufflet*, 757 F.3d at 1239. To the extent Defendant's claim is a new claim that counsel was constitutionally ineffective in failing to challenge the sentencing enhancements, such claim fails because Defendant has not set forth a meritorious argument that counsel could or should have made regarding the sentencing enhancements, much less an argument that would have altered the outcome of the proceeding.

Moreover, the Eleventh Circuit found the enhancements proper. With regard to the enhancement for use of a dangerous weapon, the Eleventh Circuit noted that the evidence at trial showed that an individual identified as the "Bald Man" held his hands under his shirt, gestured as though he had a gun, and threatened to harm F.T.'s family if F.T. did not obey his commands (ECF No. 166 at 13). As the Eleventh Circuit observed, the guidelines provide that "'dangerous weapon' includes an object *used in a manner to create the impression that the object was a dangerous weapon*, such as 'wrapp[ing] a hand in a towel during a bank robbery to create the appearance of a gun'" (*id.* (quoting U.S.S.G. § 1B1.1, cmt. 1(D) (2014)) (emphasis in original)). Whether anyone saw a gun or whether there actually was a gun is not dispositive (*id.* at 14). And, again, the "Bald Man's" actions were attributable to

Defendant, including for sentencing purposes (*id.* (citing *United States v. Maddox*, 803 F.3d 1215, 1220–22 (11th Cir. 2015)).   Considering that the evidence at trial fully supported application of the enhancement for use of a dangerous weapon, counsel was not constitutionally ineffective for failing to raise an objection in that regard.

Defendant also complains counsel did not present any argument in opposition to the upward adjustment for sexual exploitation of the victim.   Guidelines Section 2A4.1, which governs offenses involving kidnapping, provides for a six-level increase if the victim was sexually exploited.   U.S.S.G. § 2A4.1(b)(5).   The commentary defines "sexually exploited" as including offenses set forth in 18 U.S.C. §§ 2241–44, 2251, and 2421–23.   *See* U.S.S.G. § 2A4.1(b)(5), cmt. n.3.   The court need look no further than 18 U.S.C. § 2241 to find the basis for application of the sexual exploitation enhancement.   Section 2241 provides penalties for aggravated sexual abuse if an individual uses force or threatens or places the victim in fear "that *any* person will be subjected to death, serious bodily injury, or kidnapping; or attempts to do so."   18 U.S.C. § 2241(a)(1) and (2) (emphasis added).   The evidence at trial regarding the "Bald Man's" threat, F.T.'s fear for the safety of her family, F.T.'s state of mind, and the sexual assault provided abundant support for

application of the sexual exploitation enhancement (*see e.g.,* ECF No. 153 at 103–04, 108–11, 116–17).    Counsel thus was not ineffective for failing to object to the enhancement.

Defendant argues for the first time in his reply that counsel should have objected to grouping the offenses for guidelines calculation purposes because it resulted in a sentence above the statutory maximum on certain counts (*see* ECF No. 200 at 9–10).    Defendant waived this claim because he did not raise it in his motion. *See, e.g., McKiver v. Sec'y,* No. 18-14857, 2021 WL 1136536, at *4 n.1 (11th Cir. Mar. 25, 2021); *United States v. Herget,* 585 F. App'x 948, 950 (10th Cir. 2014) (ineffective assistance of counsel claim presented for the first time in section 2255 reply waived); *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998) (district court does not abuse its discretion in refusing to consider new issues raised in a section 2255 reply brief after the government filed its response) (citations omitted); *United States v. Castleberry*, Nos. 3:14cr59/RV/EMT, 3:17cv855/RV/EMT, 2020 WL 7753721 (N.D. Fla. Nov. 18, 2020) (citing cases). The claim also lacks merit.

As noted above, Defendant's total sentence included the statutory maximum term of life imprisonment on Counts 1 and 2, the statutory maximum term of 240-

months imprisonment on Counts 3 and 5, and the statutory maximum term of 120-months imprisonment on Count 4 (*see* ECF No. 134; ECF No. 125, PSR ¶ 70). Defendant's sentence did not exceed the statutory maximum on any single count; hence, there was no valid basis for an objection in that regard.    Counsel thus was not ineffective in failing to make such an objection.

       7.    Defendant's Life Sentence Violates the Eighth Amendment

Defendant argues the court's imposition of sentences of life imprisonment for non-violent offenses violates the Eighth Amendment (ECF No. 190 at 21–22). Defendant further asserts that the court demonstrated a high degree of antagonism toward him in its remarks at sentencing and erroneously attributed to him acts of Larusa from 2009 to 2011 (*id.* at 23–24).    As noted above, Defendant challenged the substantive reasonableness of his sentence on direct appeal and therefore cannot do so now (ECF No. 166 at 16–18).    To the extent the instant claim differs from Defendant's substantive reasonableness challenge on appeal, Defendant could have, but did not, raise an Eighth Amendment claim on appeal.    As a result, the claim is procedurally barred.    *McKay*, 657 F.3d at 1196; *Lynn*, 365 F.3d at 1234–35.    The claim also lacks merit.

"In general, a sentence within the limits imposed by the statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Moriarty*, 429 F.3d 1012, 1024 (11th Cir. 2005).    Defendant's characterization of events in the instant motion—that he was "merely the driver" who responded to F.T's call "to be transported from Florida to Mississippi" and was not aware F.T. had been cooperating with the FBI (ECF No. 190 at 24)—differs markedly from F.T.'s testimony at trial.    F.T. testified that Defendant spoke to her in a vulgar manner about her history of prostitution and told her that his wife[5] had been deported as a result of her cooperation and that he was in possession of a "holy death" statue, which F.T. considered to be a "satanic device," as well as a firearm located in the vehicle's glovebox (ECF No. 154 at 104–09, 122).    F.T. further testified that Defendant "made many phone calls" during the drive from Florida to Mississippi and that she overheard Defendant say "Yes, it looks like her, It is her, I'm taking her, I'm on my way" (*id.* at 109).    F.T. also testified Defendant forced her to perform oral sex on him during the drive (*id.* at 116–17).    The jury plainly credited F.T.'s testimony, at least in part, in reaching its verdict.    The court thus properly

---

[5] The PSR reflects Defendant's wife and three children live in Mexico and that Defendant has been in the United States illegally for approximately six years (ECF No. 125, PSR ¶¶ 61, 62).

considered F.T.'s testimony as to the circumstances of the crime in imposing sentence.

Additionally, the Eleventh Circuit noted numerous aggravating factors not accounted for under the Sentencing Guidelines, including the following: (1) the crimes were in retaliation for F.T. serving as a federal witness who aided in obtaining the convictions of multiple members of Larusa; (2) the threats against F.T. in the two weeks preceding the kidnapping; (3) Defendant's role in supporting Larusa, which forced vulnerable women into prostitution; (4) the lack of mitigating evidence; and (5) deterrence because at least two other people involved in the kidnapping remained at large, and the organization could attempt to retaliate against F.T. or other potential witnesses (ECF No. 166 at 17–18).   Given F.T.'s testimony and the additional aggravating factors, the sentences imposed did not violate the Eighth Amendment.

In response to the Government's assertion that life sentences are appropriate in kidnapping cases (*see* ECF No. 199 at 28 (citing cases)), in his reply, Defendant cites numerous cases in which individuals received lesser sentences for kidnapping (*see* ECF No. 200 at 11–12).   Defendant notes the penalties the other defendants received but makes virtually no attempt to analogize the circumstances underlying

the cases he cites to the circumstances in this case.   In light of the additional aggravating factors in this case, the cases Defendant cites do not bolster his claim that counsel was constitutionally ineffective in failing to object to the sentences imposed.

8.    Failure to Call a "Favorable Witness"

Defendant's last claim involving ineffective assistance of trial counsel is that counsel did not interview and call favorable witnesses to testify at trial or present favorable evidence, both of which Defendant maintains were available (ECF No. 190 at 24).   Defendant identifies only one witness he contends counsel should have called to testify—a woman known as Daniella.[6]   F.T. met and befriended Daniella during her involvement with Larusa.   Like F.T., Daniella was a prostitute for Larusa.   Defendant claims Daniella and F.T. planned the trip to Mississippi and that Daniella called him to retrieve F.T. and transport her to Mississippi in exchange for $160.00, the fee Defendant customarily charged for such services (*id.* at 25). Defendant again claims there was no "Bald Man" and says he communicated only with Daniella and F.T. regarding F.T.'s transport to Mississippi (*id.*).   In fact,

---

[6] Defendant provided Daniella's surname and an additional first name by which she is also known (*see* ECF No. 190 at 24), but the undersigned refers to her only as Daniella herein.

Defendant says Daniella called him during the trip, spoke to F.T., and agreed to pick F.T. up at Defendant's home.    Defendant has pointed to no evidence whatsoever to support his version of events or that Daniella was available and willing to testify at trial.

Daniella was mentioned at trial, however.    Agent Larry Borghini of the FBI testified that his investigation revealed that Larusa likely was able to locate F.T. because of F.T.'s continued contact with Daniella (ECF No. 155 at 149). Telephone records showed that Daniella and F.T. exchanged numerous telephone calls and text messages in the weeks before F.T.'s kidnapping and that the last telephone call F.T. made before the kidnapping was to Daniella (*id.* at 150).    The two women spoke on the telephone on almost a daily basis between May 15, 2013, and June 26, 2013, logging 199 calls during that time (*id.* at 154, 157).    Daniella did not call F.T. on the day of the kidnapping, however, and, according to Agent Borghini, "dumped her phone" that day and got a new number (*id.* at 154, 156). Daniella called F.T. from the new number on June 28, 2013, the day after the incident (*id.* at 157).    Agent Borghini testified there were no calls on F.T.'s personal telephone between F.T. and Defendant but that Daniella was listed as a contact in Defendant's telephone through the date of the kidnapping, with 58 contacts between

Defendant and Daniella between April 11, 2013, and June 27, 2013.    The telephone records led Agent Borghini to believe Daniella was conveying information regarding F.T. to Defendant (*id.* at 158–64).

In his reply, Defendant does not specify the testimony Daniella would have offered at trial or the manner in which it would have been favorable to him despite the fact the Government pointed out the fallacies in the argument in response to Defendant's motion.    Instead, Defendant says Daniella would have testified to the reason she and F.T. had such extensive communication without specifying the reason, much less how such testimony would have been favorable to him. Furthermore, although Defendant suggests Daniella would have testified that she called him to transport F.T., Defendant has wholly failed to demonstrate how such testimony would have changed the outcome at trial, given the other evidence presented.    Indeed, Daniella's experience with Larusa was similar to that of F.T. In fact, Daniella gave statements to the FBI that corroborated F.T.'s statements regarding the manner in which Larusa operated, including through threats and coercion (ECF No. 153 at 67–68, 75).

If Defendant had called Daniella to testify and Daniella had testified consistent with the statements she provided to the FBI, her testimony would have

corroborated F.T.'s testimony regarding the reasons F.T. feared Larusa. If Defendant had called Daniella to testify and Daniella had offered testimony that conflicted with the statements she provided to the FBI, Daniella would have been subject to impeachment due to the inconsistent statements, which the jury could reasonably have surmised stemmed from Daniella's fear of Larusa and/or status as an illegal immigrant. Defendant thus has failed to show counsel was constitutionally ineffective for failing to call Daniella as a witness at trial.

To the extent Daniella could have provided some level of exculpatory testimony, it bears noting that the failure to call an exculpatory witness is most prejudicial when a conviction is based on scant evidence of guilt. Here, there was abundant evidence, including from third-party witnesses, that F.T. was taken from her home against her will and in fear for her safety and that of her family (*see, e.g.,* ECF No. 155 at 67–73, 81–82, 93–96, 112, 131, 136–38). In addition to the facts set forth above, the evidence showed that F.T. did not prepare for the trip and left behind her purse and telephone (ECF No. 154 at 41, 61–63, 86, 102). It would strain credulity to believe F.T. voluntarily left her home under such circumstances, leaving her children, husband, and uncle to resume a life of prostitution with an organization, thirteen members of which were serving prison terms as a result of her

cooperation with law enforcement.    Moreover, Defendant's suggestion that F.T. and Daniella "had ownership of the so-called organization" is contrary to any evidence presented at trial and nonsensical when considered in light of the evidence actually introduced (ECF No. 190 at 25).

Defendant also contends the record contains hundreds of pages of telephone records and other documents counsel did not adequately review before trial, which Defendants says could have been used to impeach the testimony of the Government's witnesses (*id.* at 26).    Again, however, Defendant does not identify any such records or other documents or the manner in which they would have been used to impeach the Government's witnesses.    Instead, Defendant baldly asserts counsel failed to mount a meaningful challenge to the Government's case.    Such conclusory assertions do not establish ineffectiveness assistance of counsel.

C. Ineffective Assistance of Appellate Counsel

Defendant's final claim is that appellate counsel, Michael Ufferman, provided ineffective assistance on appeal by failing to raise a number of issues Defendant contends Mr. Ufferman should have raised.    Under the Sixth Amendment, defendants in criminal cases are entitled to the effective assistance of appellate counsel on direct appeal.    U.S. Const. amend. VI; *see also Evitts v. Lucey*, 469 U.S.

387, 396 (1985).   The Sixth Amendment does not require appellate counsel to raise every non-frivolous issue on appeal if counsel determines, as a matter of professional judgment, that it would be disadvantageous to do so.   *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)).   Although a defendant may bring a *Strickland* claim based on appellate counsel's failure to raise an issue on appeal, it is difficult to demonstrate counsel's performance was constitutionally ineffective in that regard.   *Davila*, 137 S. Ct. at 2067 ("Declining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court.") (citing *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000)); *see also Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing *Smith*).   "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."   *Barnes*, 463 U.S. at 751–52.   That is the "hallmark of effective appellate advocacy." *Murray*, 477 U.S. at 536.   The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that counsel's performance, which must be judged in its entirety, was effective.   *Id.*; *Heath v. Jones*, 941 F.2d 1126,

1131 (11th Cir. 1991) (counsel's appellate advocacy must be judged in its entirety); *Reutter v. Sec'y for Dept. of Corr.*, 232 F. App'x 914, 917 (11th Cir. 2007) (citing *Heath*).    And counsel is not ineffective in failing to raise a meritless issue on appeal. *Shere*, 537 F.3d at 1311; *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them."). To prevail on a claim of ineffective assistance of appellate counsel, a defendant must show (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance, he would have prevailed on appeal.    *Padgett v. United States,* 791 F. App'x 51, 55 (11th Cir. 2019) (quoting *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008)); *see also Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (holding claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*).    In addition to the issues raised, Defendant argues counsel should have raised the following issues on appeal:

      a. perjured testimony of Government witnesses (Ground 3 in the instant motion);

      b. evidentiary errors—specifically, admission of evidence Defendant contends should have been excluded pursuant to Rule 412 (Ground 4 in the instant motion);

    c.  trial counsel's failure to raise Rule 404(b) and Rule 403 objections (Ground 5 in the instant motion);

    d.  trial counsel's failure to make a Rule 29 motion (Ground 6 in the instant motion);

    e.  sentencing errors under *Apprendi*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013);[7] and

    f.  sufficiency of the evidence.

(ECF No. 190 at 27–29).    Defendant contends he was prejudiced by counsel's failure to raise such issues on appeal because if counsel had done so, there is a reasonable probability he would have prevailed and "this matter would have been remanded from direct appeal for resentencing with application of the mandatory minimum and maximum" (*id.* at 28).    For the reasons set forth above, the first four issues (a. through d.) lack merit.    The same is true with regard to the last two issues (e. and f.).

    There was no basis for an *Apprendi* claim because Defendant's sentence did not exceed the statutory maximum on any count.    And Defendant's *Alleyne* claim fails because Defendant's sentence was not based on the statutory minimum for any

---

[7] As indicated above, in *Apprendi*, the Supreme Court held that factual matters that do not increase the sentence beyond the applicable statutory maximum do not have to be tried to a jury and proven beyond a reasonable doubt.    Extending *Apprendi*, the Court held in *Alleyne* that any fact that increases the mandatory minimum sentence is an element of the crime, rather than a sentencing factor, and must be submitted to the jury and proven beyond a reasonable doubt.

count.   Rather, Defendant received the statutory maximum on each count without regard to any statutory minimum.

As to Defendant's sufficiency of the evidence claim, Defendant's challenge to the credibility or weight of evidence does not render counsel constitutionally ineffective for failing to attack its sufficiency on appeal.   Defendant argues, for example, that there was no proof of a conspiracy, retaliation, sexual assault, or the alleged co-conspirator's use of a weapon and that the jury thus did not have "adequate facts to rely on" in reaching a guilty verdict (ECF No. 201-1 at 17, 19–21).   Defendant's assertion is utterly without merit.   As set forth above, evidence of each fact Defendant cites was introduced at trial, and the jury clearly credited such evidence, at least to some extent, in finding Defendant guilty on all counts.

Counsel raised numerous issues on appeal that the Eleventh Circuit addressed at some length (*see* ECF No. 166).   It was not unreasonable for counsel to forgo raising the additional issues Defendant now raises, particularly considering that none of the issues would have affected the outcome of the appeal.   *Barnes,* 463 U.S. at 751–52; *Miller v. Dugger,* 858 F.2d 1536, 1538 (11th Cir. 1998).   Defendant therefore has not shown appellate counsel was constitutionally ineffective in failing to raise additional issues on appeal.

D.    Issues Raised in Affidavit

Defendant raises two additional issues in an affidavit attached to his memorandum (ECF No. 190-1), a redacted and translated version of which the Government attached to its response (ECF No. 199-1).    First, Defendant asserts counsel did not allow him to testify at trial (ECF No. 199 at 4; ECF No. 190-1 at 3– 4).    Specifically, Defendant contends counsel advised him that the language barrier between the two—with Defendant speaking primarily Spanish and counsel speaking English—would pose a problem at trial, and she prohibited Defendant from testifying "against his will" (ECF No. 199-1 at 4).    Contrary to Defendant's assertion, Defendant advised the court at trial, while under oath, that he decided not to testify in his defense (ECF No. 156 at 112).    Defendant affirmed he understood he had the right to testify and that if he testified, he would be subject to cross-examination by the Government (*id.*).    Defendant assured the court he had sufficient time to discuss the matter with counsel and was comfortable with his decision not to testify (*id.*).    There is nothing in the record to the contrary or even to suggest that Defendant wanted to testify at trial, much less that he somehow was precluded from doing so.

Defendant also claims he asked counsel to request that he be administered a polygraph test (ECF No. 199-1 at 5).    Defendant indicates he repeatedly attempted to take a polygraph test and that on each such occasion, counsel advised him the "machine was damaged" (*id.*).    Defendant says he asked counsel to request that F.T. be administered a polygraph test as well, which counsel refused to do, stating the Government would not agree to the request (*id.*).    Defendant raises the issue again in the amendment to his petition (ECF No. 201-1 at 26, 28).

Defendant's suggestion that a polygraph test would have proven his innocence or revealed F.T. was making false allegations is sheer speculation and conjecture. Moreover, regardless of the results such tests might have yielded, "there is simply no consensus that polygraph evidence is reliable.    To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques."    *United States v. Scheffer*, 523 U.S. 303, 309 (1998).    In fact, a trial court may admit polygraph evidence only when two conditions are met—(1) the parties stipulate in advance to the circumstances of the test and the scope of its admissibility, and (2) the evidence is offered to impeach or corroborate a witness's testimony.    *Williams v. United States*, No. 8:08-CR-180-T-17EAJ, 2013 WL 12335396, at *7 (M.D. Fla. Mar. 22, 2013) (citing *United States v. Piccinonna*, 885

F.2d 1529, 1536 (11th Cir. 1989) (en banc)).    Neither condition was met in this case; and any assumption that such evidence would have been admissible likewise is based on sheer speculation and conjecture, at best.    Counsel therefore was not constitutionally ineffective in failing to raise the issue.

## III.    CONCLUSION

For the reasons set forth above, the undersigned finds Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, or amendment thereto, have merit.    The undersigned further finds that an evidentiary hearing is not necessary for resolution of Defendant's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 873.    The undersigned therefore recommends that Defendant's motion be denied in its entirety.    As a final matter, the court declines to re-visit previous orders about which Defendant complains (*see* ECF No. 201-1 at 23, 29).

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must

state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must be filed even if the court issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   The undersigned thus also recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides that "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly it is **ORDERED**:

Defendant's Motion for leave to file an amended pleading (ECF No. 201) is **GRANTED** to the extent the court has considered the submission in preparing this Report and Recommendation.

And it is respectfully **RECOMMENDED** that:

1.    Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence by a Person in Federal Custody, as supplemented (ECF Nos. 183,

190), be **DENIED.**

2.    A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 1st day of June 2021.


    */s/ Elizabeth M. Timothy*
    **ELIZABETH M. TIMOTHY**
    **CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**